UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KIRBY L. R.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:21-cv-258 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Kirby R., on August 20, 2021. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Kirby R., filed an application for Disability Insurance Benefits, alleging a disability onset date of June 30, 2015. (Tr. 80). The Disability Determination Bureau denied Kirby R.'s applications initially on February 21, 2020, and again upon reconsideration on June 9, 2020. (Tr. 62, 76, 80). Kirby R. subsequently filed a timely request for a hearing on June 26, 2020. (Tr. 117-18). A hearing was held on December 21, 2020, before Administrative Law Judge (ALJ) James E. MacDonald. (Tr. 17). Vocational Expert (VE) Mary Andrews also appeared at the hearing. (Tr. 17). The ALJ issued an unfavorable decision on January 13, 2021. (Tr. 80-93). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

First, the ALJ found that Kirby R. met the insured status requirements of the Security Act

---
[1] To protect privacy, the plaintiff's full name will not be used in this Order.

through December 31, 2023.  (Tr. 82).  At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Kirby R. engaged in substantial gainful activity from October 2018 through December 2018.  (Tr. 82).  However, the ALJ found that there had been at least one continuous 12-month period during which the claimant did not engage in substantial gainful activity, and those periods were June 30, 2015 through September 30, 2018 and January 1, 2019 through the date of the decision.  (Tr. 82).

At step two, the ALJ determined that Kirby R. had the severe impairments of tinnitus, hearing loss, depression, anxiety, and substance abuse.  (Tr. 82).  Kirby R. also alleged a disability due to headaches.  (Tr. 83).  However, the ALJ indicated that those impairments caused no more than minimal limitations on his ability to engage in basic work activities, and therefore considered them non-severe. (Tr. 83).  The ALJ also found that Kirby R.'s schizophrenia, knee pain, and lower flank pain were non-medically determinable impairments. (Tr. 83).

At step three, the ALJ concluded that Kirby R. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 83).  The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment.  (Tr. 83-85). The ALJ considered whether the severity of Kirby R.'s mental impairments met or medically equaled the criteria of Listings 12.04 and 12.06, and Social Security Ruling 19-2p.  (Tr. 83).  The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves.

(Tr. 83). The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while an extreme limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 83). The ALJ found that Kirby R. had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing himself. (Tr. 83-85). Because Kirby R.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B. criteria were not satisfied. (Tr. 85).

After consideration of the entire record, the ALJ then assessed Kirby R.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can carry out simple tasks with simple work-related decisions and judgments performing these tasks with adequate pace, persistence and concentration in two hour segments allowing for normal breaks on low stress work such as no assembly lines or hourly quotas but can meet end of day expectations, can tolerate occasional interaction with supervisors and co-workers while avoiding all tandem tasks, must avoid all interaction with the general public, can tolerate changes in a routine work setting consistent with simple work and must avoid more than a moderate noise environment as defined in the [*Selected Characteristics of Occupations*].

(Tr. 85-86). After considering the evidence, the ALJ found that Kirby R.'s medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 86). However, he found that Kirby R.'s statements concerning the intensity, persistence, and limiting effects of those symptoms was not entirely consistent with the medical evidence and other evidence in the record. (Tr. 86).

3

At step four, the ALJ found that Kirby R. was unable to perform any past relevant work. (Tr. 91). However, the ALJ found jobs that existed in significant numbers in the national economy that he could perform. (Tr. 92). Therefore, the ALJ found that Kirby R. had not been under a disability, as defined in the Social Security Act, from June 30, 2015, through the date of the ALJ's decision. (Tr. 93).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable

"to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct.

1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Kirby R. has requested that the court remand this matter for additional proceedings. In his appeal, Kirby R. has offered two arguments in favor of remand. First, he alleges that the ALJ erred in evaluating medical opinion evidence, and, second, that the ALJ failed to properly accommodate for his moderate limitations in concentrating, persisting, and maintaining pace.

### A. Medical Opinions

Kirby R. argues that the ALJ erred in evaluating the opinions of the state agency psychologists. The Social Security Administration's previous regulations entitled the opinions of certain physicians to controlling weight based on their status as a claimant's treating physician, however, the new regulations have done away with that requirement. *See* **20 C.F.R. § 404.1520c** ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources"). Now, an ALJ must consider all medical opinions based on factors set out by the Social Security Administration with *supportability* and *consistency* being the most important factors for the ALJ to discuss. ***Kaehr v. Saul***, 2021 U.S. Dist. LEXIS 18500, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021) (emphasis added). An ALJ can, but is not required to, explain how he evaluated the remaining factors which include the physician's relationship with the claimant and any specializations. **20 C.F.R. §404.1520c**.

In this case, the state agency psychologists opined that Kirby R. was moderately limited in his ability to maintain attention and concentration for extended periods, in his ability to work

in coordination with or in proximity to others without being distracted by them, and in his ability to interact appropriately with the general public. (Tr. 58-59, 71-72). In the narrative discussion, the state agency psychologists considered that Kirby R. lived alone, cared for his personal hygiene, was in school, and could complete some household chores. (Tr. 59, 72-73). The state agency psychologists also opined that Kirby R. could follow written and spoken instructions, could handle change and stress, and got along with authority. (Tr. 59, 72-73). The state agency psychologists further stated that despite having symptoms of mood and anxiety, along with ongoing stress from being around others, Kirby R.'s allegations were inconsistent with subjective reports and objective findings. (Tr. 59, 72-73).

The ALJ found those opinions to be not persuasive, finding that "updated mental health records received at the hearing level indicate[d] that the claimant [wa]s more limited." (Tr. 90). The ALJ noted that although the state agency psychologists found that Kirby R. completed barber school, he also had developed paranoid delusions. (Tr. 90). Therefore, he found that Kirby R. was more limited than the RFC limitations in the state agency psychologists' opinions. (Tr. 90). Even so, Kirby R. alleges that the ALJ failed to mention the state agency psychologists' "potentially disabling checkbox opinions [that he] would be prone, at least some of the time, to interruptions to his sustained concentration which would result in time off task and be exacerbated by exposure to others in the workplace." [DE 17 at 10].

The claimant bears the burden of supplying evidence to prove his claim of disability. ***Ribaudo v. Barnhart***, 458 F.3d 580, 583 (7th Cir. 2006); ***Scheck v. Barnhart***, 357 F.3d 697, 702 (7th Cir. 2004). Kirby R. has failed to explain how the ALJ's RFC determination did not accommodate the state agency psychologists' findings. Kirby R. relies on ***DeCamp v. Berryhill,*** 916 F.3d 671, 676 (7th Cir. 2019) when asserting that even when an ALJ relies on a narrative

7

opinion, he "still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms." Kirby R. argues that the ALJ failed to properly consider both the checkbox limitations and the narrative opinion. He asserts that the state agency psychologists opined that he would struggle with concentration, which he claims would "logically result in *some time off task*." [DE 17 at 11] (emphasis in original). Kirby R. repeatedly speculates that the state agency psychologists' opinions finding him moderately limited in his ability to maintain attention and concentration for extended periods and in his ability to work in coordination with or in proximity to others without being distracted must result in greater off-task time than allowed for in the RFC. [DE 17 at 11-12]. However, there is no evidence in the record that his struggles with concentration and in interacting with others would result in greater limitations than those posed in the RFC. Suggesting that moderate limitations in either area would automatically result in disabling amounts of off-task time is no more than speculation, and speculation cannot stand in the place of facts.

   The state agency psychologists also concluded that Kirby R. could "perform and persist" at tasks at a lower level that could be learned in up to three months on the job with reduced public contact within physical limitations. (Tr. 59, 72). But, the ALJ provided a more limiting RFC, limiting Kirby R. to simple tasks with simple work-related decisions and judgments. (Tr. 85). The ALJ found that he could perform such tasks with adequate pace, persistence, and concentration in two-hour segments, allowing for normal breaks. (Tr. 85). The ALJ further limited him to low stress work, such as no assembly lines or hourly quotas, but found that he could meet end of day expectations. (Tr. 85). The ALJ also limited him to occasional interaction with supervisors and co-workers while avoiding tandem tasks and interaction with the

general public. (Tr. 85). Kirby R. has failed to explain or provide evidence as to how the ALJ's RFC limitations were less limiting than those proposed by the state agency psychologists.

### B. Concentrating, Persisting, and Maintaining Pace

Next, Kirby R. argues that the ALJ erred in assessing his mental RFC by failing to properly accommodate his moderate limitations in concentrating, persisting, and maintaining pace. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations"); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities"). The RFC is based upon medical evidence— including statements from medical sources about what the claimant still can do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. That section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must

> also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and [her] conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

The ALJ found that Kirby R. had a moderate limitation in his ability to concentrate, persist, or maintain pace. (Tr. 84). The ALJ noted that although Kirby R. indicated in his function report that he could pay attention for only eight minutes at a time, that he was able to follow written and spoken instructions "to the best of his ability," and that he managed changes in his routine, "somewhat ok." (Tr. 84). The ALJ also noted that after Kirby R. earned his barber's license, he applied for a few jobs and considered starting his own barber business in Africa as well as considered studying bookkeeping or accounting. (Tr. 84). Finally, the ALJ noted that the mental status examinations indicated that Kirby R. had "longitudinally been alert and fully oriented with normal memory, attention and concentration and average intelligence." (Tr. 84). As a result, the ALJ provided for the moderate limitations in concentrating, persisting, and maintaining pace by limiting Kirby R. to:

10

>simple tasks with simple work-related decisions and judgments performing these tasks with adequate pace, persistence and concentration in two hour segments allowing for normal breaks on low stress work such as no assembly lines or hourly quotas but can meet end of day expectations, can tolerate occasional interaction with supervisors and co-workers while avoiding all tandem tasks, must avoid all interaction with the general public, can tolerate changes in a routine work setting consistent with simple work and must avoid more than a moderate noise environment as defined in the [*Selected Characteristics of Occupations*].

(Tr. 85-86).

Kirby R. asserts that the ALJ's RFC did not adequately account for his moderate limitations in concentrating and persisting, arguing that simple tasks did not accommodate such limitations as indicated in ***Varga v. Colvin***, 794 F.3d 809, 814-15 (7th Cir. 2015).  As an initial matter, the ALJ did not simply limit Kirby R. to simple tasks, but instead fully explained how long he could maintain concentration, persistence, and pace.  (Tr. 85-86).  Kirby R. argues that the ability to maintain concentration for two-hour periods of time was not consistent with moderate limitations, as the "work schedule of an employee without impaired concentration [wa]s broken up into two-hour work segments with intermittent breaks sprinkled in."  [DE 17 at 16].  Kirby R. relies on ***Winsted v. Berryhill,*** 923 F.3d 472, 477 (7th Cir. 2019) to support his allegations.  However, the RFC in ***Winsted*** limited the claimant there to unskilled work with social interaction limitations.  *Id.*  This differs from the case at hand because, here, the ALJ crafted a more specific RFC.

Further, as Kirby R. points out in his opening brief, the ***Winsted*** Court looked to hypothetical questions the ALJ posed to the VE to indicate that the ALJ found that further limitations were required to accommodate a moderate limitation in concentrating, persisting, and maintaining pace.  ***Winsted***, 923 F.3d 472 at 477; [DE 17 at 17].  More specifically, the Seventh Circuit found that those two hypothetical questions were the only hypotheticals that addressed the moderate difficulties in concentrating, persisting, and maintaining pace, and therefore the

ALJ erred by failing to include any discussion of those responses and by relying on a hypothetical that did not address these limitations. *Id.*  Here, Kirby R. makes no arguments related to the hypothetical questions asked of the VE.  The ALJ offered only one hypothetical question to the VE, and it mirrored the RFC provided in the decision, therefore, ***Winsted*** is not analogous here. (Tr.  42, 85-86).

Kirby R. further relies on a number of cases where phrases used in his RFC were found to be insufficient for a claimant's moderate limitations in concentrating, persisting, and maintaining pace.  [DE 17 at 15-16].  However, again, he fails to meet his burden of proof in providing evidence that he is further limited than the ALJ's RFC provided for.  The Seventh Circuit has upheld ALJ decisions related to concentration, persistence, and pace where a claimant "has not provided any other credible medical evidence indicating that his symptoms required additional RFC restrictions to account for CPP limitations beyond those included in the ALJ's decision." ***Recha v. Saul***, 843 Fed. Appx. 1, at *10-11 (7th Cir. 2021).  Kirby R. relies on case law without connecting it to the facts in his own case, and he has provided no evidence that he cannot concentrate, persist, or maintain pace for two hours in a low stress work environment.

Moreover, no physician in the record indicated that Kirby R. required further limitations. An ALJ does not commit an error when "there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ." ***Rice v. Barnhart***, 384 F.3d 363, 370 (7th Cir. 2004).  The state agency physicians found that Kirby R. was limited to performing and persisting at tasks at a lower level that could be learned in up to three months on the job with reduced public contact.  (Tr. 90).  That was less limiting than the ALJ's RFC determination.  The only other opinion in the record that related to Kirby R.'s mental impairments was a VA initial Post Traumatic Stress Disorder Disability Benefits Questionnaire.

(Tr. 398-403).  There, the examiner found that Kirby R. only had mild limitations in his ability to concentrate, persist, or maintain pace.  (Tr. 399, 402).  The examiner did not provide any specific work-related limitations, but, nonetheless, her finding of only mild limitations was less limiting than the ALJ's findings.  Kirby R. has provided no evidence that he requires further limitations to accommodate his moderate limitations, and no medical opinion in the record supports his position.

      Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.  ENTERED this 30th day of August, 2022.

                                         /s/ Andrew P. Rodovich
                                         United States Magistrate Judge